IN THE UNITED STATES DISTRICT COURT FOR THE
                        EASTERN DISTRICT OF VIRGINIA

                            Alexandria Division


KRISTIN AINSWORTH,                )
                                  )
        Plaintiff,                )
                                  )
              v.                  )    1:11cv1228 (JCC/JFA)
                                  )
LOUDON COUNTY SCHOOL BOARD,       )
*et al.*,                         )
                                  )
        Defendants.               )


                    **M E M O R A N D U M   O P I N I O N**

          This matter is before the Court on Motions to Dismiss

[Dkts. 11, 13] filed by Defendant Loudon County School Board

("LCSB") and Defendants Paul Webb, Jill Broaddus, Mary Kearney,

Delores Creech, and Brian Peppiat (the "Individual Defendants")

(collectively "Defendants").[1]  For the following reasons, the

Court will grant in part and deny in part LCSB's Motion and

grant in part and deny in part the Individual Defendants'

Motion.

                              **I. Background**

          This case arises out of an employment dispute that

implicates the Family and Medical Leave Act ("FMLA"), 29 U.S.C.

---

[1] In the Amended Complaint, the headings for the four counts and the prayer
for relief also identify "Mary Anne Hardebeck" as a defendant.  This person,
however, is not identified in the caption or the "parties" section of the
Amended Complaint (nor is she referenced anywhere else).  Plaintiff
acknowledges that the references to Mary Anne Hardebeck are typographical
errors, and that she is not a defendant in this case.

                                    1

§ 2601, *et seq.*, and the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101, *et seq.*

A.    Factual Background

1.    Ainsworth's Employment with LCSB

Plaintiff Kristin Ainsworth was employed by LCSB from 2001 until June 21, 2010, during which time she worked as a Teacher's Assistant and Behavioral Assistant at various schools. (Am. Compl. [Dkt. 3] ¶¶ 4, 27.)  While working as a Teacher's Assistant at Seneca Ridge Middle School from 2002 to 2004, Ainsworth began to experience severe headaches, which occasionally required her to take leave from work.  (Am. Compl. ¶ 29.)  In 2004, Ainsworth transferred to Algonkian Elementary School, where she worked as a Teacher's Assistant until 2007. (Am. Compl. ¶ 30.)  Ainsworth continued to experience severe headaches during this time, and occasionally took leave without pay as a result.  (*Id.*)  In 2008, Ainsworth accepted a Behavioral Assistant position at Rosa Lee Carter Elementary School, a promotion with a pay increase from $17 per hour to $25 per hour.  (Am. Compl. ¶ 31.)  Ainsworth received positive performance evaluations up to this time.  (Am. Compl. ¶¶ 28-30.) The severe headaches persisted, and began to increase in intensity and frequency.  (Am. Compl. ¶ 31.)

2.    Ainsworth's Medical Condition and FMLA Leave

Ainsworth was approved for FMLA leave from March to
June 2008 due to the increasing severity of the headaches.  (Am.
Compl. ¶ 32.)  On May 13, 2008, Ainsworth was diagnosed with a
brain tumor.  (Am. Compl. ¶ 35.)  Ainsworth received a
performance evaluation in June 2008 which noted that she had
taken medical leave, but nonetheless concluded that her
performance was positive.  (Am. Compl. ¶ 36.)  She was
reassigned to Rosa Lee Carter Elementary School as a Behavioral
Assistant for the 2008-09 school year.  (*Id.*)

In July 2008, Ainsworth underwent surgery to remove
her brain tumor.  (Am. Compl. ¶ 37.)  She subsequently
experienced post-operative complications and underwent emergency
surgery in August 2008.  (*Id.*)  Ainsworth was approved for FMLA
leave from August 27, 2008 to December 1, 2008.  (Am. Compl. ¶
38.)  Ainsworth was granted permission to remain on a leave of
absence from December 2, 2008 to January 27, 2009.  (Am. Compl.
¶ 39.)

3.    Ainsworth Works Part-Time for Remainder of
2008-09 School Year

Ainsworth was medically cleared to return to work
part-time on January 5, 2009.  (Am. Compl. ¶ 40.)  Ainsworth
discussed the status of her classroom position with Mary
Kearney, Director of Special Education, and Delores Creech, an
LCSB Personnel Specialist.  (Am. Compl. ¶ 41.)  Kearney and

Creech assured Ainsworth that her position had not been filled, and that a long-term substitute teacher would hold the position until Ainsworth was medically cleared to work full-time. (*Id.*) In the meantime, Ainsworth was placed as an assistant to Kearney and performed secretarial work. (Am. Compl. ¶ 42.)

On March 25, 2009, Ainsworth was medically released to work in the classroom with only a restriction on the duration of her work. (Am. Compl. ¶ 43.) Ainsworth's doctor recommended that she initially work one day per week and gradually increase her workload. (*Id.*) The goal was for Ainsworth to reach full-time status after four months. (*Id.*)

Ainsworth asked Kearney and Creech if she could return to the classroom position at Rosa Lee Carter Elementary School. (Am. Compl. ¶ 44.) Both told her that she could not return to the classroom position during the middle of the school year because the children were already in a comfortable routine with the long-term substitute. (*Id.*) Ainsworth continued to work as an assistant to Kearney and performed secretarial work for the remainder of the academic year. (Am. Compl. ¶ 44.)

During the spring and summer of 2009, Ainsworth asked Kearney and Creech on several occasions whether she would be returning to a classroom position for the 2009-10 school year. (Am. Compl. ¶ 45.) Each time Ainsworth asked, Kearney and

Creech assured her that she would return to the classroom position. (*Id.*)

In June 2009, Ainsworth spoke with Creech and again asked about returning to the classroom position. (Am. Compl. ¶ 46.) This time, Creech told Ainsworth that her classroom position had been filled, and that she would need to find another position for the next academic year. (*Id.*) Ainsworth was also informed that her salary would decrease from $25 per hour to $17 per hour. (Am. Compl. ¶ 47.) When Ainsworth protested the salary decrease and told Creech that they "can't do this to [her]," Creech replied, "Well honey, we can, and we did." (*Id.*)

Once Ainsworth was advised that her position had been filled, she began searching for an alternative position for the next school year. (Am. Compl. ¶ 48.) Ainsworth was in regular contact with Creech and Kearny in trying to locate another position. (Am. Compl. ¶¶ 48-49.)

4.   <u>Ainsworth's Assignment for the 2009-10 School Year</u>

Over the summer, Creech informed Ainsworth that she was being placed at Cool Spring Elementary School as a Teacher's Assistant. (Am. Compl. ¶ 50.) Ainsworth told Creech and Kearney that she preferred to work with autistic children in a self-contained class, and not with emotionally disturbed children. (Am. Compl. ¶¶ 49-51.) Kearney informed Ainsworth

5

that she is the person responsible for determining assignments. (Am. Compl. ¶ 51.)

Ainsworth was medically released to return to work full-time beginning August 21, 2009. (Am. Compl. ¶ 52.) In the summer of 2009, Ainsworth received a letter and contract stating that she would be working as a Teacher's Assistant (Special Education) in an integrated class. (Am. Compl. ¶ 53.) Based on her conversations with Creech, Ainsworth had believed she would be working with autistic children in a self-contained class. (*Id.*)

In the summer of 2009, Jill Broaddus, Principal at Cool Spring Elementary School, contacted Ainsworth by telephone and asked Ainsworth what type of children she wanted to work with. (Am. Compl. ¶ 54.) Ainsworth reiterated her desire to work with autistic children in a self-contained class, and not with emotionally disturbed children. (*Id.*) During this conversation, Broaddus stated to Ainsworth, "Well, we get a lot of people like you." (Am. Compl. ¶ 55.) When Ainsworth asked her to explain, Broaddus replied, "Oh, you know, people with issues." (*Id.*) Ainsworth interpreted Broaddus's statement as referring to "problem" employees, or people who miss a lot of work. (*Id.*) Ainsworth was surprised by this comment, given the positive performance evaluations she had received during her employment at LCSB. (*Id.*) Broaddus ended the conversation by

6

telling Ainsworth that she would take her preferences into
consideration.  (Am. Compl. ¶ 56.)

On the first day of the school year, Ainsworth learned
that she would be working with emotionally disturbed children,
despite her request to the contrary.  (Am. Compl. ¶ 57.)  Other
teachers and teacher's assistants received the assignments they
requested.  (*Id.*)

At Cool Spring Elementary School, Ainsworth was given
increased responsibilities -- for example, preparing lesson
plans for the class.  (Am. Compl. ¶ 58.)  However, Ainsworth
received negative treatment from other teachers who were aware
of her medical condition.  (Am. Compl. ¶ 59.)  Broaddus and
Brian Peppiat, the Assistant Principal, had knowledge of
Ainsworth's brain tumor and subsequent surgeries and treatments,
but had conferences with her regarding absences.  (Am. Compl. ¶¶
60-61.)  Ainsworth reiterated that she had been diagnosed and
treated for a brain tumor and that her treatments were
continuing.  (Am. Compl. ¶ 61.)

5.   Negative Performance Evaluations, Continuing
     Medical Treatment, and Additional FMLA Leave

Thereafter, Ainsworth had meetings with Broaddus and
Peppiat in which she was given negative feedback.  (Am. Compl. ¶
62.)  Specifically, Ainsworth was told that she was not doing
her job, that she was inconsistent with the children, that the
children did not like her, and that she was failing to follow

instructions. (*Id.*) Ainsworth contends that she was doing her job well, and that Broaddus and Peppiat's statements to the contrary were false. (*Id.*)

On February 18, 2010, Broaddus presented Ainsworth with a memorandum concerning her absences from work. (Am. Compl. ¶ 63.) The memorandum indicated that in addition to being out of work for thirty days during the 2009-10 school year, Ainsworth would "call in sick late mornings when teachers are aware the day before due to Facebook postings that you are not coming to work the next day." (*Id.*) The memorandum also indicated that Ainsworth was being placed on formal evaluation for the remainder of the school year and that if there was not an improvement in Ainsworth's attendance, she was in danger of receiving an unsatisfactory rating. (*Id.*) After Ainsworth prepared a rebuttal and questioned Broaddus about the claim regarding Facebook postings, Broaddus prepared a revised memorandum dated February 22, 2010, which removed the Facebook reference. (Am. Compl. ¶ 64.)

According to Broaddus's memorandum, Ainsworth had missed thirty days of work for medical reasons as of February 18, 2010. (Am. Compl. ¶ 67.) Ainsworth continued to receive medical treatment related to the removal of her brain tumor, and was excused from work on February 19, 2010, March 5 to 8, 2010, March 18 to 19, 2010, March 25 to 26, 2010, and April 7, 2010.

(*Id.*)  On April 9, 2010, Ainsworth received an "overall unsatisfactory" performance evaluation from Broaddus which indicated that Ainsworth was "not meeting [her] job requirements due to [her] frequent absences."  (Am. Compl. ¶ 68.)  The performance evaluation also noted, however, that Ainsworth was "very organized and completes clerical tasks efficiently." (*Id.*)

Ainsworth was approved for FMLA leave from April 12 to 30, 2010, so that she could receive nerve block injections to treat her frequent headaches.  (Am. Compl. ¶ 70.)  While Ainsworth was on leave, Broaddus told her that FMLA would no longer help her and that she should get "professional help" and apply for long-term benefits.  (Am. Compl. ¶ 71.)  Ainsworth was approved for additional FMLA leave from May 1 to 28, 2010 and June 1 to 17, 2010, which related to cervical nerve block treatment.  (Am. Compl. ¶ 72.)  Ainsworth took a leave of absence for the final four days of the school year, June 18 to 21, 2010.  (Am. Compl. ¶ 73.)  In total, Ainsworth took approximately eighty-nine days of leave during the 2009-10 school year due to health issues related to the brain tumor, subsequent surgeries, radiation treatments, and nerve block injections.  (Am. Compl. ¶ 66.)

      6.   <u>LCSB Declines to Offer Ainsworth an Employment Contract for the 2010-11 School Year</u>

Following the April 9, 2010, performance evaluation, Creech assured Ainsworth multiple times that she would obtain another employment contract for the following school year.  (Am. Compl. ¶ 74.)  Nonetheless, Ainsworth received a letter from LCSB dated May 28, 2010, stating that her employment was terminated effective June 21, 2010.  (Am. Compl. ¶ 76.)  Ainsworth spoke with Creech, who confirmed that she was not receiving an employment contract based on her last performance evaluation.  (Am. Compl. ¶ 78.)

B.   Procedural History

Ainsworth initially filed suit on November 9, 2011. [Dkt. 1.]  She subsequently filed an Amended Complaint on December 20, 2011.  [Dkt. 3.]  The Amended Complaint contains four counts: (1) FMLA interference (Count I); (2) FMLA retaliation (Count II); (3) ADA wrongful discharge and failure to accommodate (Count III); and (4) intentional infliction of emotional distress ("IIED") against the Individual Defendants (Count IV).  LCSB and the Individual Defendants filed Motions to Dismiss on January 20, 2012.  [Dkts. 11, 13.]  Ainsworth filed two opposition briefs on January 31, 2012 [Dkts. 20, 21], to which LCSB and the Individual Defendants replied on February 3, 2012 [Dkts. 23, 24].  Defendants' Motions are before the Court.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff.  *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility

11

when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Id.* However, "[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice" to meet this standard,
*id.*, and a plaintiff's "[f]actual allegations must be enough to
raise a right to relief above the speculative level . . . ."
*Twombly*, 550 U.S. at 555. Moreover, a court "is not bound to
accept as true a legal conclusion couched as a factual
allegation." *Iqbal*, 129 S.Ct. at 1949-50.

## III. Analysis

### A.   Counts I and II: FMLA Claims

In Count I of the Amended Complaint, Ainsworth alleges
that LCSB interfered with her substantive rights under the FMLA
by failing to reinstate her to the same, or an equivalent,
position following the conclusion of her FMLA leave in December
2008. In Count II, Ainsworth alleges that LCSB terminated her
employment in retaliation for exercising her FMLA rights.[2] LCSB

---

[2] In analyzing these two types of claims, courts, including the Fourth
Circuit, have described the FMLA as including both prescriptive and
proscriptive rights. *See Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d
541, 546 (4th Cir. 2006). The substantive rights provided by the FMLA are
prescriptive, "set[ting] substantive floors for conduct by employers, and
creating entitlements for employees." *Id.* (alteration in original) (quoting
*Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)).
Interference claims (also known as "entitlement" or "restoration" claims)
involve alleged violations of these prescriptive rights, *id.*, and arise under
29 U.S.C. § 2615(a)(1), which provides that "[i]t shall be unlawful for any
employer to interfere with, restrain, or deny the exercise of or the attempt
to exercise, any right provided under this subchapter." In addition to
prescriptive rights, the FMLA provides proscriptive rights, protecting
employees from discrimination or retaliation for exercising their substantive

argues that both causes of action should be dismissed for
failure to state a claim.  (LCSB Mem. [Dkt. 12] at 4-8.)  The
Individual Defendants join in this argument, but also contend
that they should be dismissed from both counts because they may
not be held liable for alleged FMLA violations as public
employees in their individual capacities and, alternatively,
because Ainsworth fails to allege that they possessed sufficient
control over the terms of her employment.  (Individual Defs.'
Mem. [Dkt. 14] at 6-10).  The Court first addresses the
threshold issue of individual liability before proceeding to
Defendants' other arguments.

       1.   <u>Liability of Individual Defendants</u>

           a.   <u>Whether the FMLA Permits Public
               Employees to be Held Individually
               Liable</u>

The Individual Defendants first argue that the FMLA
does not permit liability against public employees in their
individual capacities.  There is a split of authority as to
whether public employees qualify as "employer[s]" and hence may
be held individually liable under the FMLA.  The Fifth and
Eighth Circuits have concluded, based on the statutory text,
that public employees may be sued in their individual capacities
under the FMLA if they act directly or indirectly in the

_____

rights under the FMLA. *Yashenko*, 446 F.3d at 546 (citations omitted).
Retaliation claims (also known as "discrimination" claims) involve alleged
violations of proscriptive rights, *id.*, and arise under 29 U.S.C. §
2615(a)(2), which provides that "[i]t shall be unlawful for any employer to
discharge or in any other manner discriminate against any individual for
opposing any practice made unlawful by this subchapter."

13

interest of their employer -- for example, by exercising hiring and firing authority. *See Modica v. Taylor*, 465 F.3d 174, 184-87 (5th Cir. 2006); *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002). The Sixth and the Eleventh Circuits have reached the opposite conclusion. *See Mitchell v. Chapman*, 343 F.3d 811, 825-33 (6th Cir. 2003); *Wascura v. Carver*, 169 F.3d 683, 685-87 (11th Cir. 1999). The Fourth Circuit has yet to rule on this issue, *see Jones v. Sternheimer*, 387 F. App'x 366, 369 (4th Cir. 2010) (recognizing that the issue is an open question, and expressing no opinion on the viability of [plaintiff's] claim), while district courts within the Fourth Circuit are split. *See Weth v. O'Leary*, 796 F. Supp. 2d 766, 776-77 (E.D. Va. 2011), *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 727-29 (M.D.N.C. 2004), *Cantley v. Simmons*, 179 F. Supp. 2d 654, 657-58 (S.D. W.Va. 2002) and *Knussman v. State of Maryland*, 935 F. Supp. 659, 664 (D. Md. 1996) (public employees can be individually liable under the FMLA) *with Sadowski v. U.S. Postal Serv.*, 643 F. Supp. 2d 749, 757 (D. Md. 2009), *Miller v. Cnty. of Rockingham*, No. 5:06cv00053, 2007 WL 990135, at *4 (W.D. Va. Mar. 30, 2007) and *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 777-78 (M.D.N.C. 2000) (public employees cannot be held individually liable under the FMLA). The majority view appears to be that public employees may be individually liable under the FMLA. *See Weth*, 796 F. Supp. 2d at 776 (citations omitted).

The Court is persuaded by the majority view, and holds that public employees may be sued in their individual capacities for alleged violations of the FMLA.  In analyzing this issue, the Court is mindful that "the beginning point must be the language of the statute." *Ramey v. Dir., Office of Workers' Comp. Program*, 326 F.3d 474, 476 (4th Cir. 2003) (citation omitted).  The Court must presume that when Congress writes a statute, it means what it says and says what it means. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

The text of the FMLA provides that the term "employer":

> (i)  means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii)  includes--
>
> > (I)  any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> >
> > (II)  any successor in interest of an employer;
>
> (iii)  includes any "public agency," as defined in section 203(x) of this title; and
>
> (iv)  includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A).

The FMLA plainly includes in the definition of employer "any person who acts, directly or indirectly, in the

15

interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).[3]  The statute also includes public agencies as employers.  *Id.* § 2611(4)(A)(iii). It therefore follows from a plain reading of the statute that if a public employee "acts, directly or indirectly, in the interest of an employer," she too falls within the FMLA's definition of employer, and thus, may be held liable in her individual capacity.  *Modica*, 465 F.3d at 184; *Weth*, 796 F. Supp. 2d at 777.

The Court is unconvinced by the reasoning of those courts that have held otherwise.  Some of these courts have pointed out that the individual liability provision and the public agency provision are located in two distinct clauses, 29 U.S.C. §§ 2611(4)(A)(ii)(I) and (iii), respectively, which they believe compels the interpretation that the two clauses are mutually exclusive.  *See Mitchell*, 343 F.3d at 830; *Sadowski*, 643 F. Supp. 2d at 755.  The use of the conjunctive word "and" after clause (iii), however, demonstrates precisely the opposite -- namely, that the term "employer" can include both a public agency and individuals who act, directly or indirectly, in the

---

[3] Courts finding individual liability under the FMLA have frequently looked to the Fair Labor Standards Act ("FLSA") because the definitions of "employer" in the two acts are similar and because the FMLA's implementing regulations reference this similarity.  *See Weth*, 796 F. Supp. 2d at 776 (citing 29 C.F.R. § 825.104(d)).  Most courts, including the Fourth Circuit, have taken the position that individuals can be liable for FLSA violations provided that they have sufficient control over the conditions and terms of a plaintiff's employment.  *See Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989) (explaining that an individual defendant with the power to hire and direct employees was an "employer" under the FLSA).

interest of a public agency.  *Weth*, 796 F. Supp. 2d at 777; *see also Modica*, 465 F.3d at 185 ("Congress's use of the word "and" following clause (iii) suggests that there is some relationship between clauses (i)-(iv).")

Courts subscribing to the minority view have also concluded that an interpretation that permits individual liability for public employees renders other provisions of the statute superfluous and creates several "oddities."  *See, e.g.*, *Mitchell*, 343 F.3d at 831; *Sadowski*, 643 F. Supp. 2d at 755-56. Each supposed oddity or superfluity has, however, been persuasively refuted by other courts.

First, 29 U.S.C. § 2611(4)(B), which provides that "a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce," is not rendered superfluous by the majority view.  It is true that the commingling of "employer" in 29 U.S.C. § 2611(4)(A)(i) ("employer" means "any person engaged in commerce or in any industry or activity affecting commerce") with "public agency" in § 2611(4)(A)(iii), of course, yields the following: a public agency is "any person engaged in commerce or in any industry or activity affecting commerce."  *See Sadowski*, 643 F. Supp. 2d at 756.  Even so, 29 U.S.C. § 2611(4)(B) is not superfluous -- rather, it acts to relieve plaintiffs from having to *prove* that the public agency is engaged in commerce.  *See Modica*, 465 F.3d

17

at 186; *Hewett v. Willinboro Bd. of Educ.*, 421 F. Supp. 2d 814, 820 (D.N.J. 2006).

Second, the majority view does not create an "absurdity" by commingling other clauses -- namely, the successor-in-interest provision, 29 U.S.C. § 2611(4)(A)(ii)(II) and the Government Accountability Office ("GAO") and Library of Congress provision, § 2611(4)(A)(iv). *See Mitchell*, 343 F.3d at 831 (arguing that the majority interpretation "implies that the FMLA extends specific protection to employees of the GAO and the Library of Congress from future successors in interest. . . . [I]t is an exercise in absurdity to consider that the FMLA sought to protect employees of two long-standing federal entities from threats posed by any future successors in interest"). Importantly, Section 2611(4)(A)(iv) was only included in the statute by a 1995 amendment. *See* Congressional Accountability Act of 1995, Pub.L. 104-1, § 202, 1995 U.S.C.C.A.N. (109 Stat. 9). That the amendment had an unanticipated effect on the statute as enacted should not change the "straightforward language of the clauses" with which the Court is presently concerned. *Hewett*, 421 F. Supp. 2d at 820-21.

In short, a plain reading of the statute indicates that public employees who act directly or indirectly in the interests of their employer may themselves be considered

"employers" subject to suit in their individual capacities under the FMLA. *See Weth*, 796 F. Supp. 2d at 777. Accordingly, the Court concludes that the Individual Defendants may be liable in their individual capacities under the FMLA.

        b.    Whether the Amended Complaint Alleges that the Individual Defendants Possessed Sufficient Control over the Terms of Ainsworth's Employment

The Individual Defendants next argue that even if the FMLA permits individual liability for public employees, the Amended Complaint fails to demonstrate that they possessed sufficient authority for them to be sued in their individual capacities.[4] The Court disagrees. The Amended Complaint alleges that Webb was the Director of Employee Relations at LCSB, who signed Ainsworth's non-renewal letter, (Am. Compl. ¶ 77), and that Creech was the Personnel Specialist at LCSB, (Am. Compl. ¶ 14), who told Ainsworth she would not be receiving an employment contract for the 2010-11 school year, (Am. Compl. ¶¶ 77-78.) The Amended Complaint further alleges that Kearney, Director of Special Education at LCSB, was responsible for Ainsworth's assignment at Cool Spring Elementary School for the 2009-10

---

[4] At oral argument, defense counsel also argued that pursuant to special rules applicable to public schools, LCSB was Ainsworth's "employer" with exclusive hiring and firing authority, and that, as a matter of law, the Individual Defendants lacked such authority. Other courts have rejected the argument that such "special rules" preclude individual liability under the FMLA in cases against public school boards and their employees. *See, e.g.*, *Fields v. Trollinger*, No. 1:10cv296, 2011 WL 3422689, at *7-8 (W.D.N.C. Mar. 28, 2011), *report and recommendation adopted*, 2011 WL 3421489 (W.D.N.C. Aug. 4, 2011); *Cooley v. Bd. of Educ. of the City of Chicago*, 703 F. Supp. 2d 772, 775 (N.D. Ill. 2009).

school year (*see* Am. Compl. ¶¶ 12, 51), and that Broaddus,

Principal at Cool Spring and Ainsworth's direct supervisor, and

Peppiat, Assistant Principal at Cool Spring, presented Ainsworth

with negative performance evaluations prior to the non-renewal

of her employment contract, (Am. Compl. ¶¶ 10, 16, 61-63, 68.)

These allegations, accepted as true and viewed in a light most

favorable to Plaintiff, raise the reasonable inference that the

Individual Defendants acted in the interest of their employer,

LCSB, and had sufficient control over the terms and conditions

of Ainsworth's employment that they may be individually liable

under the FMLA.   It would be premature to conclude otherwise at

this stage of the litigation.

### 2.   FMLA Interference Claim

The basis of Ainsworth's interference claim is LCSB's

failure to reinstate her to her classroom position following the

expiration of her FMLA leave in December 2008.  (Am. Compl. ¶¶

89-90.)  Instead, LCSB allegedly assigned Ainsworth part-time

secretarial work for the remainder of the 2008-09 school year.

(Am. Compl. ¶¶ 42-44.)  The FMLA prohibits employers from

interfering with the ability of employees to exercise their

substantive (or "prescriptive") rights under the FMLA.  *See* 29

U.S.C. § 2615(a)(1).  To state a claim of interference with FMLA

rights, the plaintiff must establish that "(1) she was an

eligible employee, (2) the defendant was an employer as defined

under the FMLA, (3) she was entitled to leave under the FMLA,

(4) she gave the employer notice of her intention to take leave,

and (5) the employer denied the employee FMLA benefits to which

she was entitled." *Bullock v. Kraft Foods, Inc.*, No. 3:11cv36,

2011 WL 5872898, at *4 (E.D. Va. Nov. 22, 2011) (citing *Edgar v.

JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).

Defendants argue that Ainsworth does not adequately plead the

fifth element given her failure to return to work after

expiration of FMLA leave in December 2008 and her physical

inability to perform the essential functions of her position due

to continued health issues.  (LCSB Mem. at 4-5.)  For the

following reasons, the Court agrees.

　　　　Under the FMLA, eligible employees are entitled to a

total of twelve workweeks of leave during any twelve-month

period due to a serious health condition that makes the employee

unable to perform the functions of her position.  29 U.S.C.

2612(a)(1)(D).  The FMLA also provides that an employee who

takes FMLA leave shall be entitled, on return from such leave

"to be restored by the employer to the position of employment

held by the employee when the leave commenced," *id.* §

2614(a)(1)(A), or "to be restored to an equivalent position with

equivalent employment benefits, pay, and other terms and

conditions of employment, *id.* § 2614(a)(1)(B).  However, an

employee who remains "unable to perform an essential function of

21

the position" once her FMLA leave ends is not entitled to restoration or another position.   29 C.F.R. § 825.216(c). Thus, an employer does not violate the FMLA when it fails to reinstate an employee who is physically unable to return to work at the conclusion of the twelve-week period of FMLA leave.  *See Penn v. Cnty. of Fairfax*, No. 06cv1449, 2008 U.S. Dist. LEXIS 109007, at *9 (E.D. Va. Feb. 1, 2008) (granting summary judgment in favor of employer that terminated employee who was physically unable to return to work at the end of FMLA leave), *aff'd* 289 F. App'x 648 (4th Cir. 2008) (unpublished); *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 523 (D. Md. 2008) (citing *Edgar*, 443 F.3d at 513) ("[I]nability to work at the end of the twelve-week period bars relief [under the FMLA] because any prior violation caused no harm.").[5]

Here, Ainsworth alleges that she was on FMLA leave from August 27 to December 1, 2008 (over thirteen weeks).  (Am. Compl. ¶ 38.)  She further alleges that, with LCSB's permission, she took additional, non-FMLA leave from December 2, 2008 to January 27, 2009.  (Am. Compl. ¶ 39.)  It is therefore clear from the allegations in the Amended Complaint that Ainsworth did

---

[5] As Ainsworth notes in her opposition, these cases were decided on summary judgment.  Numerous cases have, however, decided this issue on Rule 12(b)(6) motions.  *See, e.g.*, *Peoples v. Langley/Empire Candle Co.*, No. 11-2469, 2012 WL 171340, at *3-4 (D. Kan. Jan. 20, 2012); *Hofferica v. St. Mary Med. Ctr.*, --- F. Supp. 2d ----, 2011 WL 4374555, at *7 (E.D. Pa. Sept. 20, 2011); *Coffman v. Robert J. Young Co., Inc.*, No. 3:10-1052, 2011 WL 2174465, at *3 (M.D. Tenn. June 1, 2011), *report and recommendation adopted*, 2011 WL 2416745 (M.D. Tenn. June 14, 2011); *Fleck v. WILMAC Corp.*, No. 10-05562, 2011 WL 1899198, at *8 (E.D. Pa. May 19, 2011).

not return to work until after her FMLA leave expired. Ainsworth, in fact, concedes that she was not medically cleared to return to work until January 5, 2009 -- and even then only on a part-time basis. (Am. Compl. ¶ 40.) Ainsworth was medically released to return to *classroom* work on March 25, 2009, (Am. Compl. ¶ 43), with a restriction on duration of work which was not lifted until August 21, 2009, (Am. Compl. ¶ 52). Even viewed in a light most favorable to Plaintiff, the assignment to part-time secretarial work appears to have been a form of accommodation given Ainsworth's medical restrictions rather than an attempt to interfere with her FMLA rights.

In sum, it is clear from the allegations in the Amended Complaint that Ainsworth did not, and was physically unable to, return to work upon expiration of her FMLA leave. Consequently, LCSB was under no obligation to reinstate her to her former, or an equivalent, position.[6] Because Ainsworth was not denied an FMLA benefit to which she was entitled, the Court dismisses Ainsworth's interference claim.

### 3.    FMLA Retaliation Claim

Ainsworth also alleges that LCSB violated the FMLA by terminating her in retaliation for taking FMLA leave. (Am.

---

[6] That LCSB permitted Ainsworth to remain on leave of absence beyond her FMLA leave does not change this result. *See Ackerman v. Beth Israel Cemetery Ass'n of Woodbridge, N.J.*, No. 09-1097, 2010 WL 2651299, at *7 (D.N.J. June 25, 2010) ("Employees who exceed the twelve weeks of leave the FMLA provides for stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA, leave.") (internal quotation marks omitted).

Compl. ¶ 102.)  In addition to providing substantive (or "prescriptive") rights to unpaid leave in certain situations, the FMLA also provides proscriptive rights "that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006).  To state an FMLA retaliation claim, a plaintiff must establish that: (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the adverse employment action was causally connected to the plaintiff's protected activity.  *Id.* at 551 (citation omitted).

Here, there is no dispute that Ainsworth engaged in a protected activity by requesting FMLA leave.  Ainsworth also suffered an adverse employment action when LCSB declined to offer her an employment contract for the 2010-11 school year. Courts confronted with FMLA retaliation claims have imported the definition of "adverse employment action" used in the Title VII context.  *See Payne v. Fairfax Cnty.*, No. 1:05cv1446, 2006 WL 3196545, at *4 (E.D. Va. Nov. 1, 2006).  Adverse employment actions are those that negatively impact the terms, conditions, or benefits of employment, *id.*, termination being the quintessential example, s*ee Yashenko*, 446 F.3d at 551 (no dispute that termination constituted an adverse employment action).  That Ainsworth's termination arose by way of non-

24

renewal of an employment contract is of no consequence.  *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009) ("An employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII . . . ."); *cf. Swaim v. Westchester Acad.*, 208 F. Supp. 2d 579, 584-86 (M.D.N.C. 2002) (holding that offer of ten-month renewal contract at a reduced salary instead of customary twelve-month contract was an adverse employment action for purposes of Title VII).

Defendants focus on the third element of Ainsworth's retaliation claim -- the causal connection between protected activity and the adverse employment action.  According to Defendants, Ainsworth's absenteeism during the 2010-11 school year, as alleged in the Amended Complaint, demonstrates that it had a legitimate basis for deciding not to renew her employment contract.  Defendants argue that other facts alleged in the Amended Complaint, including LCSB's continuing employment of Ainsworth following her FMLA leave in 2008, make retaliatory animus implausible.  The Court finds it premature to resolve these issues at this stage of the litigation.  Ainsworth's allegations adequately establish a causal connection between her termination and her FMLA leave for purposes of surviving these

Motions to Dismiss.  For one, temporal proximity between the adverse employment action and the protected activity has been deemed sufficient for purposes of establishing a prima facie case of causality.  *Yashenko*, 446 F.3d at 551; *Payne*, 2006 WL 3196545, at *5.  Here, Ainsworth's FMLA leave concluded on June 17, 2010, and her termination was effective June 21, 2010.  Pursuant to the low threshold articulated in the Fourth Circuit, this connection sufficiently establishes a prima facie showing of causality.  Ainsworth also alleges that she was treated unfavorably as a result of her FMLA leave.  Specifically, she alleges that, unlike other staff, she did not receive her preferred assignment for the 2010-11 school year and that she received negative feedback contrary to her actual performance in the classroom.  (Am. Compl. ¶¶ 57, 62.)  These allegations, accepted as true, raise Ainsworth's right to relief on her retaliation claim above the speculative level.

The Court also rejects Defendants' argument that because Ainsworth failed to return to work upon expiration of her FMLA leave in June 2010, non-renewal of her employment contract effected no harm upon her.  The problem with this argument is that it conflates Ainsworth's retaliation claim with her interference claim.  "A retaliation claim under the FMLA differs from an interference claim under the FMLA in that the interference claim merely requires proof that the employer

denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent." *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010). The FMLA is not a strict liability statute and therefore employees seeking to recover on an interference claim must establish that the employer's violation caused them harm. *Edgar*, 443 F.3d at 507-08. Under the retaliation theory, in contrast, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Id.* at 508 (emphasis in original).

It is true, as discussed above, that once an employee exceeds the duration of her FMLA leave, the employer is not obligated by FMLA to keep that position open or reinstate the employee upon her return. *See, e.g.*, *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784-85 (6th Cir. 1998). That an employer may have a legitimate basis for its employment decision does not, however, provide it with a complete defense to a "proscriptive" retaliation claim. *Keim v. Nat'l R.R. Passenger Corp.*, No. 05-cv-4338, 2007 WL 2155656, at *6-7 & n.6 (E.D. Pa. July 26, 2007); *see also Rogers v. AC Humko Corp.*, 56 F. Supp. 2d 972, 978 (W.D. Tenn. 1999) ("[T]he purposes of the FMLA would be frustrated if an employer could escape from all liability for a retaliatory discharge . . . simply because it

was shown that the employee could not have returned to work after having taken FMLA leave."). Thus, while LCSB may have been justified in terminating Ainsworth because she remained absent at the end of her FMLA leave, this does not *necessarily* preclude the finding that unlawful considerations may have played a determinative role in its employment decision. The appropriate time for LCSB to present evidence supporting its decision not to renew Ainsworth's employment contract is summary judgment.

Finally, the Individual Defendants argue that Ainsworth does not sufficiently identify which individuals were involved in terminating her employment. (Individual Defs.' Mem. at 9.) The Court disagrees. At this stage of the litigation, Ainsworth's allegations adequately demonstrate that each of the Individual Defendants engaged in conduct which -- viewed in a light most favorable to Plaintiff -- qualify as retaliatory. For these reasons, dismissal of Ainsworth's retaliation claim is inappropriate.

### B.   Count III: ADA Claims

In Count III, Ainsworth alleges violations of the ADA. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

28

conditions, and privileges of employment." 42 U.S.C. §
12112(a). Although organized under one count, Ainsworth brings
two separate claims under the ADA: (1) a claim for wrongful
discharge and (2) a claim for failure to accommodate. LCSB
argues that Ainsworth fails to state a claim under either
theory.[7] The Court addresses each claim in turn.

### 1. Wrongful Discharge

In order to state a claim for ADA wrongful discharge,
a plaintiff must demonstrate that (1) she is within the ADA's
protected class; (2) she was discharged; (3) at the time of her
discharge, she was performing the job at a level that met her
employer's legitimate expectations; and (4) her discharge
occurred under circumstances that raise a reasonable inference
of unlawful discrimination. *Haulbrook v. Michelin N. Am., Inc.*,
252 F.3d 696, 702 (4th Cir. 2001). One falls within the ADA's
protected class if she is "a qualified individual with a
disability." *Id.* (citation omitted). LCSB spends most of its
energy arguing that Ainsworth's ADA wrongful discharge claim
fails because she was not a qualified individual with a
disability. Under the ADA, a qualified individual is "an
individual who, with or without reasonable accommodation, can
perform the essential functions of the employment position that

---

[7] In the Amended Complaint, Ainsworth asserts her ADA claims against both LCSB
and the Individual Defendants. In her opposition brief, she concedes that no
cause of action exists against the Individual Defendants for ADA violations.
(Opp. to Individual Defs.' Mot. to Dismiss [Dkt. 21] at 10.) Accordingly,
Count III is dismissed with prejudice insofar as it is asserted against the
Individual Defendants.

such individual holds or desires." 42 U.S.C. § 12111(8).
According to LCSB, Ainsworth was not a qualified individual
because she could not perform an essential function of her job
-- *i.e.*, attendance at work.

   "In addition to possessing the skills necessary to
perform the job in question, an employee must be willing and
able to demonstrate these skills by coming to work on a regular
basis." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d
209, 213 (4th Cir. 1994). Therefore, a regular and reliable
level of attendance is an essential function of most jobs. *Id*.
Moreover, this Court has previously concluded that FMLA leave
may be held against an employee in determining whether she is
able to perform the essential functions of her job within the
meaning of the ADA. *Payne*, 2006 WL 3196545, at *8.

   Here, Ainsworth was released to return to work full
time without restrictions on August 21, 2009 (Am. Compl. ¶ 52),
but continued to miss work on a regular basis. Before February
18, 2010, Ainsworth missed thirty days of work for medical
reasons and was excused from work by her doctors on February 19,
2010, March 5 to 8, 2010, March 18 to 19, 2010, March 25 to 26,
2010, and April 7, 2010. (Am. Compl. ¶ 67.) Ainsworth took
FMLA leave from April 12 to May 28, 2010 and June 1 to 17, 2010,
and took additional, non-FMLA leave from June 18 to 21, 2010.
(Am. Compl. ¶¶ 72-73.) Ainsworth also pleads that she was to

30

continue nerve block treatments until August 2011.  (Am. Compl. ¶ 80.)

While it is true that regular attendance is a necessary element of most jobs, it is also true that modified work schedules can constitute a form of reasonable accommodation.  *Leschinskey v. Rectors & Visitors of Radford Univ.*, No. 7:11cv189, 2011 WL 5029813, at *2 (W.D. Va. Oct. 24, 2011) ("The term reasonable accommodation may include  . . . part-time or modified work schedules.") (quoting 42 U.S.C. § 12111(9)).  And, although an employer need not "wait indefinitely" for an employee's medical conditions to be corrected, *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995), many courts have held that "a period of leave *can* in some circumstances be a reasonable accommodation required of an employer under the ADA," *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 652 (1st Cir. 2000) (emphasis in original); *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 595 (S.D. W.Va. 2008).

Whether periods of leave may be considered a reasonable form of accommodation presents a "troublesome problem, partly because of the oxymoronic anomaly it harbors" and also "because of the daunting challenge of line-drawing it presents." *Garcia-Ayala*, 212 F.3d at 651.  Indeed, courts have held that this issue is generally a question of fact, *Pandazides*

*v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994), and is more appropriately addressed at summary judgment, *see Shannon v. City of Philadelphia*, No. 98-5277, 1999 WL 126097, at *3 (E.D. Pa. Mar. 5, 1999) ("Whether granting the additional leave requested was a reasonable accommodation and whether the [defendant] could provide it to [plaintiff] without undue hardship are factual inquiries that are not properly decided in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

Although Ainsworth missed substantial time at work, it is at least plausible at this stage of the litigation that her leaves of absence qualify as a form of reasonable accommodation. Notably, Ainsworth was a teaching assistant and not a teacher, which suggests that a modified work schedule may have been a workable arrangement. Ainsworth also alleges that despite her absences, she performed well in the classroom and received increased responsibility as a result. (Am. Compl. ¶ 58.) For these reasons, the Court finds it premature to conclude that Ainsworth is not a "qualified employee" at this time.

LCSB's remaining arguments are likewise unavailing. Contrary to LCSB's assertion, non-renewal of Ainsworth's employment contract counts as "discharge" for purposes of the ADA. *See Fontenot v. Our Lady of Holy Cross Coll.*, No. 11-1375, 2011 WL 4368836, at *5 (E.D. La. Sept. 19, 2011) (finding

allegation that defendant decided not to renew plaintiff's
employment contract for 2009-10 academic year based on
disability sufficient for ADA wrongful discharge claim).   LCSB
also argues that Ainsworth's allegations demonstrate she was not
performing her job at a level that met her employer's legitimate
expectations when the non-renewal decision was made.   To the
extent LCSB is referring to Ainsworth's absences (*see* Am. Compl.
¶ 68), an employee's taking of leave does not *per se* preclude
the employee from proving she was meeting her employer's
legitimate expectations.   *See Gladden v. Winston Salem State
Univ.*, 495 F. Supp. 2d 517, 523 (M.D.N.C. 2007) (rejecting
argument that plaintiff's ADA wrongful discharge claim should be
dismissed because absence at time of termination meant that
plaintiff could prove under no set of facts he was performing
his job at a level that met employer's expectations).   While
Ainsworth admits that she received negative feedback from
Broaddus and Peppiat concerning her performance in the
classroom, she asserts that she was performing her job well and
that Broaddus and Peppiat's statements were false.   (Am. Compl.
¶ 62.)   In addition, Ainsworth alleges that she consistently
received positive performance evaluations prior to that time
(Am. Compl. ¶¶ 28-30), that she was given increased
responsibility in the classroom (Am. Compl. ¶ 58), and that even
her negative performance evaluation noted that she was "very

organized and completes clerical tasks efficiently," (Am. Compl. ¶ 68).  Given the apparent contradiction between these allegations and LCSB's contention that Ainsworth failed to meet its legitimate expectations, dismissal of Ainsworth's wrongful discharge claim on this basis is inappropriate at this stage of the litigation.  Accordingly, the wrongful discharge claim survives as to LCSB.

2.   Failure to Accommodate

An ADA failure to accommodate claim consists of the following elements: (1) the employee was an individual who had a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with reasonable accommodation the employee could perform the essential functions of the position; and (4) the employer refused to make such accommodations.  *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).  LCSB again argues that Ainsworth is not a qualified individual and that no reasonable accommodation would have enabled her to perform the essential functions of her position.  These arguments fail for the reasons stated in connection with Ainsworth's wrongful discharge claim.

In addition, however, LCSB argues that Ainsworth's failure to accommodate claim should be dismissed because she fails to allege that she requested a reasonable accommodation. (LCSB Mem. at 10.)  In response, Ainsworth points to her

34

requests for FMLA leave so she could receive nerve block injections to the back of her head and neck.  (Opp. to LCSB Mot. to Dismiss [Dkt. 20] at 21.)  The problem for Ainsworth is that LCSB *granted* these periods of FMLA leave.  Indeed, the Amended Complaint does not point to a single instance where LCSB denied Ainsworth leave.  To the extent Ainsworth's claim is premised on her termination (*i.e.*, so LCSB would no longer have to grant leave), such a theory conflates failure to accommodate with wrongful discharge.  *See Vlasek v. Wal-Mart Stores, Inc.*, No. H-07-0386, 2007 WL 2402183, at *5 (S.D. Tex. Aug. 20, 2007) ("It is generally accepted that a failure to accommodate is not like or reasonably related to an allegation of termination.") (collecting cases).

While Ainsworth is correct that a plaintiff need not use "magic words" in making a request, the plaintiff must make clear to the employer that she wanted assistance for her disability.  *Parkinson v. Anne Arundel Med. Ctr.*, 79 F. App'x 602, 604-05 (4th Cir. 2003) (unpublished) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)). Nowhere in the Amended Complaint does Ainsworth allege that she requested some form of accommodation other than leaves of absence.

Lastly, Ainsworth argues that LCSB had an affirmative duty to engage in "a flexible, interactive dialogue with [her]

35

in a good faith effort to discuss and exhaust reasonable accommodations.  (Opp. to LCSB Mot. to Dismiss at 22 (citing 29 C.F.R. § 1630.2(o)(3)).)  "However, an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Walter v. United Airlines, Inc*., 232 F.3d 892, 2000 WL 1587489, at *4 (4th Cir. Oct. 25, 2000) (unpublished table decision) (citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000)).  "Rather, the employee must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee." *Id*.

Here, Ainsworth does not allege that LCSB failed to engage in such a process with her.  And, as noted above, Ainsworth does not allege that she requested a reasonable accommodation other than leave nor does she allege that such a request was ever denied.  The failure to make these allegations warrants dismissal.  *See Morgan v. Rowe Materials, LLC*, No. 3:08cv576, 2009 WL 1321514, at *3 (E.D. Va. May 11, 2009) (dismissing failure to accommodate claim where plaintiff failed to allege whether he sought reasonable accommodations and whether such accommodations were denied).  Accordingly, Ainsworth's failure to accommodate claim is dismissed.

C.   Count IV: Intentional Infliction of Emotional
     Distress Claim

In Count IV of the Amended Complaint, Ainsworth alleges a state-law claim for IIED.[8]   (Am. Compl. ¶¶ 126-37.)   To establish a claim for IIED, a plaintiff must sufficiently allege that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe.   *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004) (citations omitted); *Supervalu, Inc. v. Johnson*, 276 Va. 356, 369-70 (Va. 2008).   This cause of action is generally disfavored.   *Almy v. Grisham*, 273 Va. 68, 81 (Va. 2007).   Specifically, liability for IIED has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   *Russo v. White*, 241 Va. 23, 27 (Va. 1991) (citation omitted).   "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."   *Gaiters v. Lynn*, 831

---

[8] The Court is exercising supplemental jurisdiction over Ainsworth's IIED claim pursuant to 28 U.S.C. § 1367(a).  In exercising supplemental jurisdiction over the state law claim, the Court must apply Virginia's substantive law.  *Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1416 n.7 (4th Cir. 1992); *Brown v. Mitchell,* 327 F. Supp. 2d 615, 628 n.27 (E.D. Va. 2004).

F.2d 51, 53 (4th Cir. 1987).  It "arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it."  *Russo*, 241 Va. at 27 (citation omitted).

The Fourth Circuit held in *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005), that under Federal Rule of Civil Procedure 8 a plaintiff is not required to plead IIED with the particularity usually required under Virginia law. Nevertheless, even under the *Hatfill* notice pleading standard, Ainsworth has failed to establish an IIED claim.  In support of her IIED claim, Ainsworth alleges that certain of the Individual Defendants branded her a "problem" employee with "issues," criticized her work performance, and otherwise treated her negatively.  While this conduct may have upset Ainsworth, it simply does not rise to the level of "atrocious" conduct that goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized community," as required by Virginia law.  *Russo*, 241 Va. at 27.  Moreover, courts applying Virginia law have regularly recognized that it is especially difficult to establish IIED in the employment context.  *See, e.g.*, *Musselman v. Merck & Co., Inc.*, No. 1:06cv845, 2006 WL 2645174, at *5-6 (E.D. Va. Sept. 13, 2006) (holding that series of employment actions culminating in termination failed to give rise to an IIED claim); *Burke v. AT & T Technical Servs. Co., Inc.*, 55 F.

38

Supp. 2d 432, 441 (E.D. Va. 1999) (holding that a demotion and termination allegedly based on racial discrimination, while "insidious and unacceptable," did not constitute outrageous conduct); *Beardsley v. Isom*, 828 F. Supp. 397, 401 (E.D. Va. 1993) (holding that actions allegedly taken in retaliation for the plaintiff's complaints of sexual harassment did not rise to the requisite level of severity), *aff'd sub nom.*, *Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994). Accordingly, the Court dismisses Ainsworth's IIED claim.

## IV.   Conclusion

For these reasons, the Court will grant in part and deny in part LCSB's Motion and grant in part and deny in part the Individual Defendants' Motion.

An appropriate Order will issue.


|                        | /s/                                |
| ---------------------- | ---------------------------------- |
| March 16, 2012         | James C. Cacheris                  |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE |